STATE OF CONNECTICUT *v.* JOSE A. RIVERA
(AC 24569)

Dranginis, Flynn and McLachlan, Js.

---

Argued April 25—officially released July 19, 2005

*Elizabeth M. Inkster*, senior assistant public defender, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom was *Michael Dearington*, state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Jose A. Rivera, appeals from the judgment of conviction, rendered after a jury trial, of carrying a pistol or revolver without a permit in violation of General Statutes § 29-35, sale of narcotics in violation of General Statutes § 21a-277 (a), conspiracy to sell narcotics in violation of General Statutes §§ 21a-277 (a) and 53a-48 (a), and conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-59 (a) (5). The defendant was acquitted of murder in violation of General Statutes § 53a-54a (a). On appeal, the defendant claims that there was insufficient evidence to support the conviction. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On November 5, 1996, the victim, Phillip Cusick, and his friend, William Clark, were at the home of their mutual friend in North Haven. Clark was working on his Volkswagen Jetta. As it got dark outside, Clark drove Cusick and Michael Kobuta, another friend, in his Jetta to the Zebra bar in New Haven. After leaving the bar and driving Kobuta home, Clark drove to the vicinity of Silhouette's bar on Ferry Street in New Haven, with Cusick as his passenger, for the purpose of purchasing crack cocaine. For several years, Clark had been going to New Haven to buy narcotics. He sometimes would pay the full purchase price, but when he did not have enough money, he would pay less than the purchase price and quickly drive away. Just two weeks earlier, he had driven his Jetta to English Street in New Haven

where he had purchased crack cocaine and given the dealer less than the full asking price.

Clark and Cusick turned off Ferry Street somewhere in the area of Peck, Dover and English Streets to make a purchase. At some point, Clark drove to the curb, and Cusick was sitting in the front passenger seat with his window rolled halfway down. Clark testified at trial that he believed more than one person approached the passenger side of the car, but he could not remember if there was any subsequent conversation or any exchange of drugs or money. Clark heard a popping sound, similar to the sound of a car backfiring or gunshots, and quickly drove away. Clark could not remember if Cusick was conscious at that time. Clark eventually purchased a ten dollar bag of crack cocaine, which he used in his car on the highway ramp heading onto Interstate 91. Clark then drove on the highway toward North Haven and stopped to telephone his girlfriend and arranged to pick her up. Believing that Cusick had passed out from drinking heavily, Clark moved him to the backseat so that his girlfriend could sit in the front passenger seat. Clark and his girlfriend then drove to North Haven, where Clark took Cusick out of the car and left him near Cusick's house.

On November 6, 1996, at approximately 1:45 a.m., William Joslyn and Kevin Kelly, North Haven police officers, responded to a call that a man was lying on the side of the road. The man was cool to the touch and had no vital signs. Kelly recognized the man to be Cusick. Edward T. McDonough, deputy chief medical examiner, testified that Cusick had been killed by a single bullet that entered his right armpit, passed through his chest, damaging his heart and lungs, and exited through his left armpit. Additional facts will be set forth as necessary.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the suffi-

ciency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of inno-

cence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Gary*, 273 Conn. 393, 405–406, 869 A.2d 1236 (2005).

## I

The defendant first claims that the state failed to prove that he conspired to commit assault in the first degree and to sell narcotics. Specifically, he claims that the jury found him guilty without any evidence that he ever agreed with anyone that drugs be sold to Cusick or that Cusick be assaulted. We do not agree.

"To sustain a conviction under § 53a-48 (a), the state needs to prove beyond a reasonable doubt (1) that a defendant intended that conduct constituting a crime be performed, (2) that he agreed with one or more persons to engage in or cause the performance of such conduct and (3) that he and any one of those persons committed an overt act in pursuance of such conspiracy. General Statutes § 53a-48 (a). Conspiracy is a specific intent crime, with the intent divided into two parts: (1) the intent to agree to conspire; and (2) the intent to commit the offense that is the object of the conspiracy. . . . To sustain a conviction for conspiracy to commit a particular offense, the prosecution must show not only that the conspirators intended to agree but also they intended to commit the elements of the offense." (Internal quotation marks omitted.) *State* v. *Vasquez*, 68 Conn. App. 194, 209, 792 A.2d 856 (2002).

## A

We first consider the defendant's claim that the evidence was insufficient to support his conviction of con-

spiracy to commit assault in the first degree. We are not persuaded.

General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm."

In this case, the jury reasonably could have inferred from the evidence that the defendant agreed with one or more persons to shoot the victim with a firearm. There was testimony at trial from which the jury could infer that the defendant was present when an agreement was made to commit assault. Reynaldo Martinez, a member of the Elm City Nation, a drug gang, testified at trial that on the day of the shooting, members of the gang, including the defendant, had talked about someone who drove in and did a drug "rip-off" and "how they wanted to get back even."

There also was testimony from which the jury reasonably could infer that there was an overt act in furtherance of such conspiracy. Martinez testified that later that night, a car stopped on Atwater Street and the defendant conversed with the occupants of the vehicle before the car went right onto Dover Street and stopped. Demetrius "Mitch" Cox approached the car, conversed with its occupants, nodded and signaled to the defendant. The jury heard Martinez testify that he saw the defendant go to a bush, where a pistol and drugs were kept by the Elm City Nation gang, and run back to the passenger side of the car, and then heard a gunshot. Martinez testified that later that night, the defendant said to Martinez: "I got him. I got him."

The jury also heard testimony from Randy Fraizer, a member of Elm City Nation gang, who testified that after the gunshots were fired, he ran outside and saw

a cream colored Volkswagen Jetta drive away. He approached the defendant, who was holding a gun in his hand, and inquired what had happened. The defendant explained that a "guy ripped me off." During an interview with John Bashta, a detective from the New Haven police department, the defendant admitted that he had been "ripped off" several times in the past and, in response, had shot at vehicles or the person in the vehicle.

The defendant argues that he admitted to Bashta only that he had shot at several specific vehicles, including a burgundy Grand Prix, a white Pontiac and a pickup truck, but did not admit that he had shot at a light colored Volkswagen Jetta. However, Fraizer and Martinez testified that they saw the defendant shoot at a Volkswagen Jetta, and Bashta testified that the defendant told him that he "believed in his heart" that he shot at the Jetta or the individual in it, but that he "can't say that he did. And if we said that he did, then he probably did." The defendant was acquitted of murder. In order to support a conviction of conspiracy to commit assault, however, it is not necessary to prove that the defendant killed Cusick, but only that he made an overt act in furtherance of a conspiracy to cause serious physical injury to Cusick by means of a firearm. From all of this testimony, the jury reasonably could have inferred that the defendant, in furtherance of the conspiracy, intended to agree with other members of the gang to cause serious physical injury to another person by means of the discharge of a firearm to avenge an earlier nonpayment for narcotics and that the defendant, in shooting at the Jetta, committed the necessary overt act in furtherance of the conspiracy.

B

We next consider the defendant's claim that the evidence was insufficient to support his conviction of con-

spiracy to sell narcotics in violation of §§ 53a-48 (a) and 21a-277 (a).[1] We are not persuaded.

The jury heard sufficient testimony from which it rationally could find that the defendant was engaged in a conspiracy to sell narcotics. The defendant told Bashta, during an interview, that he was a member of the Elm City Nation gang, which was engaged in selling marijuana and cocaine. Bashta testified that the defendant said that within this operation he "mainly worked sort of the like the day shift, 9:00 to 5:00, or something, and then he did work at night also." The defendant explained to Bashta how the operation worked: one or two others would act as "lookouts" and watch for the police and look for prospective buyers, and one person would act as the dealer and would direct a car to the side of the road, approach the occupants in the vehicle and inquire how much narcotics the buyer wanted and then would run to an area of bushes on Dover Street where a pistol and a stash of drugs were kept. If a customer left without paying the full price, then the defendant would shoot at the vehicle or the occupants of the vehicle. Martinez also detailed the gang's system of operation, how a pistol and drugs were kept in the bushes and how the defendant was selling drugs that night. Fraizer also testified about the drug operation and stated that after he heard the gunshots, he asked the defendant why he was making "this block hot" and thereby attracting police attention because "then we won't be able to sell our drugs and get money like we supposed to." The jury had ample evidence from which it could determine that the defendant had agreed with other members of the gang to engage in the sale of

---

[1] General Statutes § 21a-277 (a) provides in relevant part: "Any person who . . . possesses with the intent to sell . . . any controlled substance . . . for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned . . . ."

narcotics and, through Martinez's testimony, that the defendant had been selling drugs that night and had acted as a payment enforcer by shooting at a vehicle or its occupant who had not paid for the contraband.

The defendant claims that because Clark frequented English and Peck Streets and had done a drug rip-off there several weeks earlier, the evidence was insufficient to support the defendant's conviction because Elm City Nation held its drug operation on the corner of Dover and Atwater Streets and that one block over, on English and Peck Streets, another group dealt drugs. Clark testified that he was intoxicated the night of November 5, 1996, and could not remember which street he drove down in search of cocaine, but he stated that it was in the area of English, Peck and Dover Streets. Although Clark was uncertain of the street on which the incident occurred, Martinez's and Fraizer's identification of Clark's Volkswagen Jetta placed him on Dover Street.

The defendant further contends that *State* v. *Estrada*, 28 Conn. App. 416, 612 A.2d 110, cert. denied, 223 Conn. 925, 614 A.2d 828 (1992), controls. In that case, we determined that the evidence presented did not permit the jury reasonably and logically to infer that the defendant was engaged in a conspiracy to commit murder. Id., 424. There were no witnesses who could identify the person or persons who did the shooting. No weapon ever was found, and the individuals who were suspected of doing the shooting, and with whom the defendant allegedly had conspired, tested negative for gunpowder residue on their hands. Id., 422.

The defendant argues that the evidence in this case linking him to the commission of the crimes was insufficient in part because, in the information, the state's attorney charged the defendant with the commission of the crimes for which he was convicted on a certain

date, and the nexus between the criminal acts and the time of the offenses was missing. The information charged that the crimes occurred on or about November 5, 1996. Although Fraizer and Martinez could not remember the exact date on which the events occurred, they both described the incident and identified Clark's Volkswagen Jetta.

Unlike the evidence in *Estrada*, the evidence in this case linking the defendant to the conspiracy is not too far attenuated. See id., 423. In contrast, here there was evidence directly linking the defendant to a conspiracy to sell drugs and to commit assault. The defendant, during an interview with Bashta, admitted to his involvement in the drug selling operation and to his shooting at the victim. Furthermore, Martinez and Fraizer, in their testimony, described the drug selling operation of the Elm City Nation gang, and Martinez stated that the defendant was selling drugs that night. Martinez described how the defendant went behind some bushes where a pistol and drugs were hidden, and ran back to the car and gunshots were fired. Fraizer testified that after he heard the gunshots, he saw the defendant holding a gun in his hand. Unlike the attenuated evidence in *Estrada*, the evidence presented in this case did permit the jury reasonably and logically to infer that the defendant intended to engage in the criminal activity that was the object of the conspiracies.

## II

The defendant next claims that his conviction for possession of a pistol without a permit may not be sustained because the state failed to prove that he was carrying, without a permit, a "firearm having a barrel less than twelve inches in length."[2] General Statutes

[2] General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his or her person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. . . ." The offense in the present case was committed in 1996. Section 29-35 has been

§ 29-27. Specifically, the defendant argues that the jurors had no evidence from which they could infer anything about the length of the barrel without resorting to speculation and conjecture. We do not agree.

Although the weapon was not recovered, we conclude from our review of the record that the state presented sufficient facts from which the jury reasonably could have inferred that the defendant had a pistol with a barrel length of less than twelve inches, which he carried without a pistol permit.

The state introduced evidence that the defendant did not have a permit. Louis Spina, a New Haven police detective, testified that he had checked the files and there was not a permit to carry a pistol in the defendant's name.

Although the gun used to kill the victim was not introduced at trial, the state introduced testimony and photographs of a firearm, which qualified as similar to the firearm used, from which the jury could have inferred that the defendant carried a pistol with a barrel less than twelve inches. Martinez testified that the defendant ran to the bushes where the drugs and a pistol were kept, and ran back to the car, and he saw a flash and heard a noise like a gunshot. Fraizer testified that after the gunshots were fired, he ran outside and saw the defendant holding a gun in his hand. Edward Jachimowicz, from the department of public safety forensic science laboratory, testified that the bullet that struck Cusick was a .380 caliber consistent with a High Point semiautomatic pistol. He provided the police with a photograph of a handgun fitting that description. The photograph was entered as exhibit twenty-three, and

amended several times since then for purposes not relevant to this appeal.

General Statutes § 29-27 provides: "The term 'pistol' and the term 'revolver', as used in sections 29-28 to 29-38, inclusive, mean any firearm having a barrel less than twelve inches in length."

Martinez identified it as similar to the one used by the defendant. Bashta testified that a handgun, such as the one pictured in exhibit twenty-three, has a barrel of three and one-half to four inches. Fraizer identified a similar handgun to the police and stated at trial that it was a .380 caliber gun. The defendant told Bashta that he had a .22 caliber, a .25 caliber, a .38 caliber and a .380 caliber gun. At trial, the state introduced the photographs of handguns, which were identified by Martinez and Fraizer, and from those photographs the jury could have inferred that the gun used by the defendant had a barrel that was less than twelve inches in length.

The defendant further contends that the state did not set forth any evidence that he possessed a pistol on the night of November 5, 1996. The defendant argues that Martinez placed his version of events a month or more after Cusick was shot and that Fraizer testified about events that had occurred almost a year earlier. Martinez testified that he remembered two incidents when gunshots were fired. The first was a prior incident he first remembered as occurring sometime in November, 1996. He could not remember how much later the night in question had occurred, but when pressed, he said that "[i]t could have been weeks" later. When asked whether he was present back in 1995 and 1996 when gunshots were fired, Fraizer responded that he was present when gunshots were fired on Atwater and Dover Streets, but he could not remember the date. Although Fraizer and Martinez could not remember the exact date of the incident, they both described seeing the defendant on Dover Street, hearing gunshots and seeing a Volkswagen Jetta being driven away. The state introduced photographs of the Jetta, which Fraizer and Martinez identified as similar to the automobile they saw the night of the shooting and which Clark identified as his car.

Fraizer and Martinez may not have remembered the exact day on which they saw the defendant carrying a gun, but they remembered the incidents of that night and Clark's Volkswagen Jetta, in particular, which he drove on Dover Street on the night of November 5, 1996. A jury is free to accept or reject, in whole or in part, the evidence presented by any witness. *State* v. *Medina*, 228 Conn. 281, 310, 636 A.2d 351 (1994). The credibility of the state's witnesses, and the weight given their testimony, are matters left to the sound judgment and common sense of the jury. *State* v. *Breton*, 235 Conn. 206, 234, 663 A.2d 1026 (1995). The jury obviously believed the state's witnesses and found, on the basis of all of the evidence, that the state had proven beyond a reasonable doubt that the defendant was guilty of the charge of carrying a pistol without a permit.

### III

The defendant next claims that the evidence was insufficient to support his conviction of the sale of narcotics in violation of § 21a-277 (a).[3] We disagree.

The jury reasonably could have inferred from the evidence presented at trial that the defendant had sold drugs on the night Cusick was shot. The defendant admitted to Bashta that he sold marijuana and cocaine. Martinez described how the gang members hid drugs under a bush and testified that on the night of the shooting, the defendant was selling drugs. From Martinez's testimony alone, the jury could have determined that the defendant had been selling drugs that night.

The defendant told Bashta that when he was selling drugs, customers would drive to the side of the road, the dealer would approach the car and ask what quantity of narcotics the customer wanted, and then the dealer would run to an area of bushes where the drugs were

---

[3] See footnote 1.

stashed. Clark could not remember if the defendant sold drugs to Cusick when he approached the passenger side of the car, but, in addition to Martinez's testimony that the defendant was selling drugs that night, the jury also could have inferred that the defendant was selling drugs by his actions, namely, conversing with the occupants of the vehicle and then going to the bush area where a pistol and drugs were kept and coming back to the passenger side of the car. Fraizer testified that when he asked the defendant why he was firing shots, the defendant told him that "the guy ripped me off . . . and came and try to do the same shit." When construing the evidence presented at trial in the light most favorable to sustaining the jury's verdict, we conclude that, from the facts established and the inferences reasonably drawn therefrom, the jury reasonably could have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt.

The judgment is affirmed.

In this opinion the other judges concurred.

