STATE OF CONNECTICUT *v.* PATRICK MILES
(AC 25785)

McLachlan, Harper and Mihalakos, Js.

Argued June 2—officially released August 22, 2006

*Stephanie L. Evans*, special public defender, for the appellant (defendant).

*Kelly Ann Martin*, certified legal intern, with whom were *Paul J. Narducci*, senior assistant state's attorney, and, on the brief, *Kevin T. Kane*, state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Patrick Miles, appeals from the judgment of conviction, rendered after a jury trial, of criminal possession of a firearm in violation of General Statutes § 53a-217[1] and carrying a pistol without a permit in violation of General Statutes § 29-35 (a).[2] On appeal, the defendant claims that there was insufficient evidence to establish that he (1) violated § 53a-217 because the state failed to prove that the gun he possessed was operable and (2) violated § 29-35 (a) because the state failed to establish that the barrel of the gun was less than twelve inches. We conclude that

[1] General Statutes § 53a-217 (a) provides: "A person is guilty of criminal possession of a firearm or electronic defense weapon when such person possesses a firearm or electronic defense weapon and (1) has been convicted of a felony, (2) has been convicted as delinquent for the commission of a serious juvenile offense, as defined in section 46b-120, (3) knows that such person is subject to a restraining or protective order of a court of this state or to a foreign order of protection, as defined in section 46b-15a, that has been issued against such person, after notice and an opportunity to be heard has been provided to such person, in a case involving the use, attempted use or threatened use of physical force against another person, or (4) knows that such person is subject to a firearms seizure order issued pursuant to subsection (d) of section 29-38c after notice and an opportunity to be heard has been provided to such person. For the purposes of this section, 'convicted' means having a judgment of conviction entered by a court of competent jurisdiction."

[2] General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his or her person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. . . ."

there was sufficient evidence and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At about 11 p.m. on November 9, 2002, the victim, Ralph Irizarry, and Sikkim Gibson, the mother of one the victim's children, were at an Exxon gasoline station and convenience store on the corner of Broad and Ledyard Streets in New London. The victim was confronted by Ramel Artist, who was known by the nickname Rah. Artist seemed upset and threw a punch at the victim. The victim blocked the punch and attempted to avoid further conflict. Immediately thereafter, the defendant joined in the confrontation with the victim and began to throw punches. While Artist continued to assault the victim, the defendant pulled a gun on the victim. Seven to ten seconds after the confrontation, the victim was shot in his abdomen.

The victim and Gibson got in their car and left. They noticed what appeared to be a gunshot wound and blood on the victim's stomach. They immediately went to Lawrence and Memorial Hospital. On the way to the hospital, the victim told Gibson that "P shot me. P shot me, Kim."[3] At the hospital, a bullet was removed from the victim's abdomen.

Approximately two weeks later, William Pero, a detective with the New London police department, went to New Haven to interview the victim. During the interview, Pero showed the victim a photographic array and asked the victim to pick out the person who had shot him. The victim picked out a photograph of the defendant.

On April 3, 2003, the New London police department recovered a .25 caliber semiautomatic pistol from a parking lot outside a McDonald's restaurant on Colman

---

[3] At trial, the victim identified the defendant as "P."

Street in New London. The pistol had been thrown from a vehicle in which four individuals had been riding.[4] Edward Jachimowicz, a firearms and tool mark examiner with the state forensic science laboratory, testified that the bullet recovered from the victim had been fired from the gun that was recovered outside of the McDonald's.

During the course of further investigation, Gibson gave a written statement to the police in which she stated: "Today [October 13, 2003] I came to the New London police department to talk with Detective Pero and Officer [Chad] Stringer about a shooting of my daughter's father [the victim] on November 10, 2002. Detective Pero showed me two photo lineups of black males. I pointed out a photo in one line up of a male I know as Rah. He was having an argument with [the victim] before [the victim] got shot. I did see Rah punch [the victim] in the face, but [the victim] just backed away with his hands in the air like [the victim] wanted no problems.

"I also pointed out the photo of a male I know as P. He was standing nearby. I saw him holding a small silver handgun. I had a bad feeling so I got into the car we arrived in, and then I heard a shot and I saw [the victim] turn and run towards the car. [The victim] was saying 'I'm shot Kim. I'm shot Kim.' I told [the victim] to get in the car so we could leave. [The victim] said 'P shot me. P shot me, Kim.'"

The defendant was subsequently arrested and charged in a four count substitute information with assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and (5), carrying a pistol without a permit in violation of § 29-35 (a) and criminal possession of a firearm in violation of § 53a-217. After trial,

---

[4] At trial, the state was unable to introduce evidence linking the defendant to the four individuals.

he was acquitted of the two counts of assault in the first degree but convicted on the third and fourth counts and sentenced to four years incarceration. This appeal followed.

The defendant claims that the record reflects insufficient evidence underlying his conviction. "The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Elsey*, 81 Conn. App. 738, 743–44, 841 A.2d 714, cert. denied, 269 Conn. 901, 852 A.2d 733 (2004). "[W]e do not sit as the seventh juror when we review the sufficiency of the evidence . . . rather, we must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict of guilt beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Glasper*, 81 Conn. App. 367, 372, 840 A.2d 48, cert. denied, 268 Conn. 913, 845 A.2d 415 (2004).

I

The defendant's first claim on appeal is that the state did not provide evidence to support his conviction of criminal possession of a firearm in violation of § 53a-217. Specifically, the defendant claims that the state did not provide any evidence that the firearm he possessed on November 10, 2002, was operable.[5] We disagree.

---

[5] The term firearm as it applies to General Statutes § 53a-217 is defined in General Statutes § 53a-3 (19): " 'Firearm' means any sawed-off shotgun,

"The operability of a firearm can be proven by either circumstantial or direct evidence." *State* v. *Bradley*, 39 Conn. App. 82, 91, 663 A.2d 1100 (1995), cert. denied, 236 Conn. 901, 670 A.2d 322 (1996). Here, the jury found sufficient evidence to show that the firearm the defendant possessed was capable of discharging a gunshot. Both the victim and Gibson indicated that they saw the defendant with a small silver handgun at the gasoline station. The victim testified that the only person he saw with a firearm that night was the defendant. The victim further testified that seven to ten seconds elapsed from the time that he was confronted by Artist and the defendant and the time that he was shot. In addition, on the ride to the hospital, the victim told Gibson that "P shot me. P shot me, Kim." The victim also identified the defendant as the person who had shot him when the victim picked him out of the photographic lineup. Moreover, on cross-examination, the victim testified that he thought the defendant was the person who had shot him. Finally, the gun that had discharged the bullet that struck the victim was recovered approximately five months later and was introduced into evidence. It met the description of a small silver handgun that the witness had seen. Accordingly, the jury had sufficient evidence to determine reasonably that the gun the defendant possessed was operable.

II

The defendant's second claim on appeal is that the state did not provide any evidence to support his conviction of carrying a pistol without a permit in violation of § 29-35 (a). Specifically, the defendant claims that the state did not provide any evidence to show that the

machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded from which a shot may be discharged . . . ."

barrel was less than twelve inches in length.[6] We disagree.

Direct numerical evidence is not required to establish the length of the barrel of a handgun in question. See *State* v. *Williams*, 231 Conn. 235, 251–52, 645 A.2d 999 (1994). Here, on the basis of the evidence introduced at trial, the jury reasonably could have found that the firearm in the defendant's possession had a barrel less than twelve inches in length. The victim testified that he saw the defendant with a handgun. He stated that "it was a handgun, a silver handgun." In addition, Gibson gave a statement in which she stated that she saw the defendant holding a small silver handgun.[7]

In *State* v. *Rivera*, 90 Conn. App. 312, 323–24, 876 A.2d 606, cert. denied, 275 Conn. 925, 883 A.2d 1250 (2005), a witness identified a photograph of a handgun with a barrel of less than twelve inches as being similar to the one the defendant possessed. In that case, this court held that the jury had sufficient evidence before it to infer that the gun used by the defendant had a barrel of less than twelve inches in length. Id., 323. Like the witness in *Rivera*, the victim in this case also testified that the gun in the defendant's hand was similar to the gun that was marked as exhibit fifteen, which the jury had during deliberations.[8] Accordingly, we conclude from our review of the record that the state presented sufficient evidence from which the jury

[6] General Statutes § 29-27 provides. "The term 'pistol' and the term 'revolver', as used in sections 29-28 to 29-38, inclusive, mean any firearm having a barrel less than twelve inches in length."

[7] During cross-examination, Gibson testified that she saw something small and silver but could not state with certainty if it was a handgun. The jury could consider Gibson's previous statement or her testimony as circumstantial evidence that the defendant was carrying a pistol.

[8] State's exhibit fifteen was the .25 caliber pistol that was recovered from the McDonald's parking lot. The jury had this gun as an exhibit and could conclude that its barrel was less than twelve inches in length.

reasonably could have inferred that the defendant had a pistol with a barrel length of less than twelve inches.

The judgment is affirmed.

In this opinion the other judges concurred.