******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* WINSTON
ANTHONY RILEY
(AC 36576)

Gruendel, Sheldon and Borden, Js.

*Argued May 21—officially released September 1, 2015*

(Appeal from Superior Court, judicial district of New London, A. Hadden, J.)

*Deren Manasevit*, assigned counsel, with whom, on the brief, was *Auden Grogins*, for the appellant (defendant).

*Deborah Violet Abrams*, certified legal intern, with whom were *Nancy L. Chupak*, senior assistant state's attorney, and, on the brief, *Michael L. Regan*, state's attorney, and *Stephen M. Carney*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SHELDON, J. The defendant, Winston Anthony Riley, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 and 53a-134 (a) (3), and attempt to commit larceny in the second degree in violation of General Statutes §§ 53a-49 and 53a-123 (a) (3). Following the jury's guilty verdict on these and two other related charges,[1] the defendant was sentenced by the court to a total effective term of six years incarceration.[2] The defendant appeals on two grounds: (1) that there was insufficient evidence to support the jury's rejection of his defense of renunciation[3] beyond a reasonable doubt; and (2) that the court's jury instruction on the defense of renunciation was constitutionally inadequate. We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, are relevant to this appeal. On March 18, 2012, the defendant drove to the Mohegan Sun Casino in Montville in order to make up an $800 gambling loss from the prior day. Upon his arrival at the casino, the defendant attempted to withdraw money from an automated teller machine, but could not do so because his wife had transferred money out of their account. After returning to his car and falling asleep for a period of time, the defendant woke up and decided to commit a robbery. The defendant thus slipped a knife up the sleeve of his sweatshirt and began to walk around the parking garage.

Louise Carty, an eighty-three year old woman, was at the casino on March 18, 2012, to play the penny slots. As she was entering the elevator in the Winter Parking Garage, Carty noticed that a man, later identified as the defendant, was following her inside. After the elevator door closed, the man, whom Carty was never able to identify, "all of a sudden pull[ed] a knife out of his pocket and head[ed] toward me." In response, Carty screamed, "No, no, no," and shoved the man, causing him to jump away from her. Carty then grabbed the man's sweatshirt by the sleeve and pursued him off the elevator. The man never took or demanded money or property from Carty or verbally threatened her.

At trial, the defendant sought to defend himself by raising the defense of renunciation under General Statutes § 53a-49 (c).[4] In support of that defense, he testified as follows. First, he admitted that he was the man who had accosted Carty in the elevator. Having initially intended to rob her, he admittedly followed her into the elevator, pulled a knife out of his sleeve to confront her and took two or three steps toward her after the elevator doors closed. The defendant described as follows what happened in the elevator as he began to approach Carty:

"[Defense Counsel]: What was your intention at that moment?

"[The Defendant]: My intentions as I approached her, as I took, like, the second or third step to her, I'm, like, oh, my God, this could by my grandmother; what am I doing?

"[Defense Counsel]: So, when you thought that, what were you going to do about that; were you going to do anything about your thought?

"[The Defendant]: I immediately said I'm sorry. I basically curled the knife toward myself, and I was, like, I'm sorry, I'm sorry. She then grabbed me."

Carty, by contrast, testified that, although she heard the man mumble something after she shoved him, she could not make out what he said and did not hear him say that he was sorry. After she and the man exited the elevator, the man hustled away from Carty while she told others in the vicinity that the man had tried to knife her. Additional facts will be set forth as necessary.

I

The defendant first claims that the state failed to disprove beyond a reasonable doubt that he renounced his criminal purpose under § 53a-49 (c). According to the defendant, the state did not successfully rebut his testimony that he changed his mind as he took his second or third step toward Carty, then curled his knife back toward himself and apologized, because both Carty's testimony and a casino surveillance video of the incident supported his version of events. Although the defendant did not preserve this issue at trial, claims of evidentiary insufficiency are invariably reviewable on appeal because they are based on the alleged violation of a fundamental constitutional right. See *State* v. *Lewis*, 303 Conn. 760, 767 n.4, 36 A.3d 670 (2012). We disagree with the defendant's claim on the merits, concluding that the evidence in this case was sufficient to disprove his defense of renunciation beyond a reasonable doubt.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . [W]e do not sit as the seventh juror when we review the sufficiency of the evidence . . . rather, we must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable infer-

ences therefrom, supports the jury's verdict of guilt beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Miles*, 97 Conn. App. 236, 240, 903 A.2d 675 (2006).

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal." (Internal quotation marks omitted.) *State* v. *Taylor*, 306 Conn. 426, 432, 50 A.3d 862 (2012).

In evaluating sufficiency of the evidence claims, "we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Patterson*, 276 Conn. 452, 461, 886 A.2d 777 (2005). "It is axiomatic that evidentiary inconsistencies are for the jury to resolve, and it is within the province of the jury to believe all or only part of a witness' testimony." *State* v. *Meehan*, 260 Conn. 372, 381, 796 A.2d 1191 (2002).

Before evaluating the defendant's claim, it is first necessary to examine the defense of renunciation. At common law, renunciation was not universally recognized as a defense to the crime of attempt. P. Hoeber, "The Abandonment Defense to Criminal Attempt and Other Problems of Temporal Individuation," 74 Cal. L. Rev. 377, 381–82 (1986); Model Penal Code and Commentaries (1985) § 5.01, comment 8, p. 356 ("[i]t was uncertain under the law prior to the drafting of the Model Code whether abandonment of a criminal effort, after the bounds of preparation had been surpassed, constituted a defense to a charge of attempt"). The Model Penal Code, however, included the defense of renunciation in its 1962 proposed official draft. P. Hoeber, supra, p. 382 and n.14.

Two main reasons have been advanced for allowing the defense of renunciation to the crime of attempt. First, an actor's renunciation of his criminal purpose prior to the completion of a substantive crime suggests that he did not have a firm purpose to commit the crime, and thus tends to negate his dangerousness. Model Penal Code and Commentaries, supra, § 5.01, comment 8, p. 359. Second, the availability of the defense can provide the actor with the motivation to desist from his criminal effort, "thereby diminishing the risk that the substantive crime will be committed." Id.

Connecticut first codified renunciation as an affirmative defense to the crime of attempt in 1969, basing it in substance on the Model Penal Code.[5] See General Statutes § 53a-49 (c). Connecticut modeled its Penal Code on the penal law of New York; see *State* v. *Henry*, 253 Conn. 354, 363, 752 A.2d 40 (2000); which had codi-

fied renunciation as an affirmative defense just four years earlier. Then, as now, New York's defense of renunciation provides in relevant part: "In any prosecution . . . for an attempt to commit a crime, it is an affirmative defense that, under circumstances manifesting a voluntary and complete renunciation of his criminal purpose, the defendant avoided the commission of the crime attempted by abandoning his criminal effort and, if mere abandonment was insufficient to accomplish such avoidance, by taking further and affirmative steps which prevented the commission thereof." N.Y. Penal Law § 40.10 (3) (McKinney 2009).

In 1971, by the passage of Public Act No. 871, our legislature changed renunciation from an affirmative defense to an ordinary defense, thereby shifting the burden to the state to disprove the defense beyond a reasonable doubt whenever it is raised at trial. See *State* v. *Clark*, 264 Conn. 723, 730, 826 A.2d 128 (2003) ("Whereas an affirmative defense requires the defendant to establish his claim by a preponderance of the evidence, a properly raised defense places the burden on the state to disprove the defendant's claim beyond a reasonable doubt. See General Statutes § 53a-12. Consequently, a defendant has no burden of persuasion for [an ordinary defense]; he has only a burden of production. That is, he merely is required to introduce sufficient evidence to warrant presenting his claim . . . to the jury." [Emphasis omitted; footnote omitted.]).

Section 53a-49 (c), as amended by P.A. 71-871, provides in relevant part that "[w]hen the actor's conduct would otherwise constitute an attempt . . . it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose." So defined, the defense of renunciation has two essential elements: (1) that the defendant prevented the commission of the substantive crime that he initially attempted to commit by abandoning his effort to commit that crime and, if mere abandonment of his own effort to commit the crime was insufficient to prevent its commission, by taking such further steps as were necessary to accomplish such prevention; and (2) that he prevented the commission of the substantive crime under circumstances manifesting a complete and voluntary renunciation of his criminal purpose.

A defendant is deemed to have raised the defense of renunciation, and thus to have met his *burden of going forward* with respect to that defense, whenever the evidence presented at trial, if construed in the light most favorable to the defendant, is sufficient to raise a reasonable doubt in support of each essential element of the defense. See *State* v. *Bryan*, 307 Conn. 823, 834, 60 A.3d 246 (2013). The defendant, however, has no *burden of proof* with respect to the defense of renuncia-

tion. Instead, the state has the burden of disproving that defense beyond a reasonable doubt whenever it is duly raised at trial. See General Statutes § 53a-12 (a).

In order to meet its burden of proof as to the defense of renunciation, the state need only disprove one of its two essential elements beyond a reasonable doubt. It can therefore meet its burden of proof either (1) by disproving that the defendant prevented the commission of the substantive crime attempted; or (2) if the state cannot disprove that he prevented the commission of that substantive crime, by disproving that he prevented its commission under circumstances manifesting a complete and voluntary renunciation of his criminal purpose.

As to the first of these two methods of disproving the defense of renunciation, by disproving the "abandonment/prevention" element thereof, it is important at the outset to distinguish between the crime of attempt itself and the substantive crime that is its object. An attempt to commit a substantive crime is completed when the defendant intentionally takes a substantial step toward the completion of that substantive crime, while acting with the mental state required for the commission of that crime. General Statutes § 53a-49 (a). "Proof of an attempt to commit a specific offense requires proof that the actor intended to bring about the elements of the completed offense. . . . Moreover, to be guilty of attempt, a defendant's conscious objective must be to cause the result which would constitute the substantive crime." (Citation omitted; internal quotation marks omitted.) *State* v. *Sorabella*, 277 Conn. 155, 169–70, 891 A.2d 897, cert. denied, 549 U.S. 821, 127 S. Ct. 131, 166 L. Ed. 2d 36 (2006).

Once the substantive crime is completed, the defense of renunciation becomes unavailable to the defendant as a matter of law. Before the substantive crime is completed, however, the defense of renunciation remains available to the defendant as long as commission of the substantive crime can still be prevented. See *State* v. *Kelly*, 23 Conn. App. 160, 165–66, 580 A.2d 520, cert. denied, 216 Conn. 831, 583 A.2d 130 (1990), cert. denied, 499 U.S. 981, 111 S. Ct. 1635, 113 L. Ed. 2d 731 (1991). Where, then, a defendant's preparatory conduct toward the commission of a substantive crime proceeds so far as to constitute the completed crime of attempt, the defendant can still avoid liability for attempt to commit the substantive crime on the basis of such preparatory conduct by preventing the commission of that crime under circumstances manifesting a complete and voluntary renunciation of his criminal purpose.

A defendant can prevent the commission of a substantive crime by abandoning his own effort to commit that crime, or if abandoning his own effort to commit that crime is insufficient to prevent its commission, by pre-

venting its commission in another manner. A defendant's abandonment of his own effort to commit a substantive crime is sufficient to prevent its commission when the defendant, acting alone, has not set in motion any force that is beyond his control by the time of his abandonment. When, by contrast, the defendant is acting with a confederate, or has set in motion some force that is beyond his control, abandonment of his own effort to commit the crime may not be sufficient to prevent the commission of the substantive crime unless he also takes such further steps as are necessary to prevent its commission, either by the confederate or by operation of the force he has previously set in motion.

As to the second method of disproving the defense of renunciation, by disproving the "complete and voluntary" element thereof, General Statutes § 53a-50 provides the following further explanation: "[R]enunciation of criminal purpose is not voluntary if it is motivated, in whole or in part, by circumstances, not present or apparent at the inception of the actor's course of conduct, which increase the probability of detection or apprehension or which make more difficult the accomplishment of the criminal purpose. Renunciation is not complete if it is motivated by a decision to postpone the criminal conduct or to transfer the criminal effort to another but similar objective or victim." See also Model Penal Code and Commentaries, supra, § 5.01, comment 8, p. 356 ("An 'involuntary' abandonment occurs when the actor ceases his criminal endeavor because he fears detection or apprehension, or because he decides he will wait for a better opportunity, or because his powers or instruments are inadequate for completing the crime. There has been no doubt that such an abandonment does not exculpate the actor from attempt liability otherwise incurred. A 'voluntary' abandonment occurs when there is a change in the actor's purpose that is not influenced by outside circumstances. This may be termed repentance or change of heart. Lack of resolution or timidity may suffice." [Footnotes omitted.]).

The parties in the present case do not dispute that the defendant abandoned his effort to commit the substantive crimes of robbery and larceny against Carty. Thus, the only contested issue in this case was whether the defendant's abandonment of his effort to commit those crimes against Carty and the resulting prevention of their commission took place under circumstances manifesting a complete and voluntary renunciation of the defendant's criminal purpose.

The defendant claims that he decided not to rob Carty when he took his second or third step toward her in the elevator, but before she screamed and grabbed him. On cross-examination, the defendant denied that his change of mind resulted from Carty grappling with him

or the elevator door opening. Although the state played the video recording of the incident when it cross-examined the defendant, he denied that it showed him moving toward Carty without stopping and turning away before she grabbed him and pushed him away.

The state presented the following evidence to prove that the defendant's prevention of the crimes of robbery and larceny against Carty was not complete and voluntary. First, Carty testified that she screamed when she saw the defendant pull out the knife, and kept on screaming, "No, no, no." According to Carty, she "kind of" shoved the defendant, then heard him mumble something, although later she said that she never touched the defendant.

Second, the state presented video evidence that afforded the jury a substantial basis for rejecting the defendant's claim as to the sequence of events here at issue. A review of the video recording shows the following. Carty entered the elevator, followed by the defendant. After the doors closed, as the defendant and Carty were standing on opposite sides of the elevator from one another, the defendant pulled a knife from his sleeve and approached Carty. The defendant then took three steps toward Carty, who did not appear to notice him until he was taking his third step, at which point she immediately raised her hands, grabbed his right hand (holding the knife) and his left wrist/forearm, and pushed him away, causing the defendant to take a step backward. The defendant and Carty briefly struggled before the defendant raised his arms in an apparent attempt to free himself from her grasp, then briefly broke free and turned away from her toward the opening elevator doors. At that point, as the defendant was slightly in front of and to the left of Carty, she grabbed a piece of his sweatshirt, near the elbow of his right sleeve, and held onto it as the defendant walked off the elevator in front of her. The surveillance video does not have sound and does not clearly show the defendant's or Carty's mouth moving. The video also does not clearly show the defendant curling his knife back toward himself before Carty raised her hands and pushed him.

Construing this evidence in the light most favorable to the state, we conclude that it was sufficient to support the jury's conclusion that the defendant's abandonment of his criminal purpose was not complete and voluntary. The jury reasonably could have concluded, based on Carty's testimony alone, that she screamed as soon as she saw him coming at her with the knife, and that the defendant, upon hearing her scream and feeling her resist him physically, abandoned his criminal effort to rob her under circumstances that were neither voluntary nor complete. The jury reasonably could have concluded that the defendant decided that the screaming Carty would "increase the probability of [his] detection

or apprehension," because her actions could draw attention to him. General Statutes § 53a-50. Moreover, the jury reasonably could have concluded that Carty's screaming at and wrestling with the defendant—both circumstances that were not apparent at the inception of the defendant's criminal conduct—led the defendant to "postpone [his] criminal conduct or to transfer the criminal effort to another but similar objective or victim," such as a more cooperative victim. General Statutes § 53a-50. The video evidence corroborates Carty's version of events. The video shows the defendant turning away from Carty only *after* she sought to defend herself against him by grabbing him and shoving him away. The jury thus reasonably could have viewed the video as supporting the state's version of events—that the defendant did not abandon his criminal effort until it became clear to him that Carty would not be a passive victim.

Considering the totality of the evidence in the light most favorable to the state, as we must, we conclude that there was ample evidence for the jury to find that the state disproved beyond a reasonable doubt that the defendant abandoned his criminal effort under circumstances manifesting a complete and voluntary renunciation of his criminal purpose.

## II

The defendant next claims that "[t]he trial court erred in rejecting a critical portion of [his] requested jury instruction on [his defense of] renunciation, as the language omitted by the trial court was necessary to the jury's determination of whether the state disproved [his] renunciation defense beyond a reasonable doubt." At trial, the defendant not only requested that the omitted language be included in the court's charge, but took exception to its exclusion therefrom. The defendant thereby preserved his claim of error for appellate review.

"A challenge to the validity of jury instructions presents a question of law over which this court has plenary review. . . . It is well settled that jury instructions are to be reviewed in their entirety. . . . [T]he test to be applied . . . is whether the charge . . . as a whole, presents the case to the jury so that no injustice will result." (Citation omitted; internal quotation marks omitted.) *State* v. *Brown*, 118 Conn. App. 418, 428–29, 984 A.2d 86 (2009), cert. denied, 295 Conn. 901, 988 A.2d 877 (2010). A charge need not be perfect to survive a defendant's challenge to its correctness on appeal. "As long as [the court's instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Kitchens*, 299 Conn. 447, 455, 10 A.3d 942 (2011). An improper instruction in a criminal case constitutes reversible error "when it is shown that it is reasonably

possible for [improprieties] of constitutional dimension or reasonably probable for nonconstitutional [improprieties] that the jury [was] misled." (Internal quotation marks omitted.) Id.

A defendant's right to present a defense is of constitutional dimension. Thus, "[w]here the legislature has created a legally recognized defense . . . [due process requires] a proper jury instruction on the elements of the defense . . . so that the jury may ascertain whether the state has met its burden of disproving it beyond a reasonable doubt." *State* v. *Fuller*, 199 Conn. 273, 278, 506 A.2d 556 (1986). When the evidence presented at trial, construed in the light most favorable to the defendant, supports such a defense, a charge on the defense is obligatory. Id.

The language that the defendant requested as to the state's burden of disproving his defense of renunciation was as follows: "The defendant has no burden of proof whatsoever with respect to this defense. The state has the burden of disproving this defense beyond a reasonable doubt. In other words, the defendant is entitled to an acquittal if the state fails to disprove beyond a reasonable doubt that: [1] the defendant's renunciation of his criminal purpose was complete and voluntary; *OR [2] that the defendant took affirmative steps and acts that served to prevent the commission of the crime attempted.*" (Emphasis added.) The defendant claims error in the court's omission of the italicized language from its final instruction regarding the defense of renunciation. The court's jury instruction on the defense read in its entirety: "There has been some evidence presented with regard to the defense of renunciation of a criminal purpose. The defendant claims that he abandoned his effort to commit the crime before his actions violated the law. The statute defining this defense reads in pertinent part as follows. When the actor's conduct would otherwise constitute an attempt, it shall be a defense that he abandoned his effort to commit the crime, or otherwise prevented his commission under circumstances manifesting a complete and voluntary renunciation of his criminal purpose. Renunciation is not voluntary if it is motivated in whole or in part by circumstances not present or apparent at the inception of the actor's course of conduct that increased the probability of detection or apprehension, or that make it more difficult to accomplish the criminal purpose. Renunciation is not complete if it is motivated by a decision to postpone the criminal conduct, or to transfer the criminal effort to another, but similar, objective or victim. The defendant has no burden of proof whatsoever with respect to this defense. The state has the burden of disproving this defense beyond a reasonable doubt. In other words, the defendant is entitled to an acquittal if the state fails to disprove beyond a reasonable doubt that the defendant's renunciation of his criminal purpose was complete and voluntary."

The defendant asserts that the omitted language on the prevention element of renunciation described an alternative legal and factual basis, supported by the evidence presented at trial, upon which he was entitled to prevail on his defense of renunciation if the state could not disprove it beyond a reasonable doubt. Here, then, he claims, since the evidence supported his claim that he prevented the commission of first degree robbery and second degree larceny by taking the "affirmative steps and acts" of curling back his knife and turning away from Carty without demanding, much less taking, any of her property, the jury should have been required to acquit him of attempt to commit those crimes if it found, under proper instructions, that the state failed to disprove beyond a reasonable doubt that he took affirmative steps and acts that served to prevent the commission of those crimes.

The state disputes the defendant's claim, noting principally that the court's instruction quoted accurately from the renunciation statutes, and thus properly identified both essential elements of renunciation. Furthermore, it argued that, in this case, there was no need to instruct the jury on how the defendant might "otherwise [have] prevent[ed]" the commission of the crimes here attempted, for such an instruction is only necessary when the defendant has set in motion an external agent that would have completed those substantive crimes had he not taken affirmative steps and acts to prevent that from occurring. For those reasons and others, we agree with the state that the court's instruction on the defense of renunciation was not deficient in the manner alleged.[6]

As a threshold matter, we note that the defendant's argument is premised on a fundamental misunderstanding of the law of renunciation and, in fact, of his own request to charge. The request to charge properly noted that the defense of renunciation has two essential elements, and that the state could meet its burden of disproving the defense by disproving either such element beyond a reasonable doubt. What that meant, as a practical matter, is that even if the state could not disprove one such essential element beyond a reasonable doubt, it still could meet its burden of disproving the defense of renunciation by disproving the other essential element beyond a reasonable doubt.

With those rules clearly stated, the request to charge did not state that the defendant was entitled to an acquittal on the charge of attempt if the state could not disprove one essential element of the defense of renunciation. Such a statement would have been legally incorrect because, to reiterate, our law makes disproof of either such essential element a fully effective means of defeating the defense whenever it is raised at trial.

Against this background, the defendant's claim that

his requested instruction to the jury on the prevention element of renunciation might have resulted in his acquittal of attempted first degree robbery and attempted second degree larceny is simply wrong. Even if the evidence tending to show that he prevented the commission of first degree robbery and second degree larceny by taking affirmative steps and acts to prevent their commission was overwhelming, such evidence would not have established his defense of renunciation, or thus have required his acquittal, for the state could still defeat that defense by disproving beyond a reasonable doubt that the circumstances in which he prevented the commission of such crimes manifested a complete and voluntary renunciation of his criminal purpose. For this reason, the most basic construct in the defendant's argument must be rejected. Under no circumstances—under our law or under the defendant's own request to charge—would he have been entitled to a judgment of acquittal of attempted first degree robbery or attempted second degree larceny merely because the state could not disprove the prevention element of that defense beyond a reasonable doubt.

A second reason why the defendant's challenge to the sufficiency of the court's instruction on the prevention element of renunciation is unavailing is that there has never been any issue in this case as to whether the defendant abandoned his effort to commit the substantive crimes that were the objects of his alleged attempt. Both the state and the defense treated the defendant's abandonment of his effort to commit larceny and robbery against Carty as an established fact in their closing arguments at trial. As a result, the only way in which the state could have disproved his defense of renunciation was to disprove that he abandoned his effort to commit robbery and larceny under circumstances manifesting a complete and voluntary renunciation of his criminal purpose.

Third, as the state correctly argues, the court was correct in not having identified in its instruction how the defendant, apart from abandoning his own effort to commit the substantive crimes of first degree robbery and second degree larceny, could otherwise have prevented the commission of those substantive crimes. This is so because the defendant, having acted alone throughout his foreshortened effort to commit those crimes, did not need to do anything more than abandon his own effort to commit them in order to prevent their commission. Had the defendant been working with a confederate, the abandonment of his own effort to commit the crimes of robbery and larceny might have been insufficient to prevent their commission unless he took steps to stop his confederate from committing them. Similarly, if the defendant had set in motion a force designed to complete such crimes, the abandonment of his own effort to commit them might not have been sufficient to prevent their commission without taking

further steps to prevent that force from completing them. Because, however, the defendant acted without the aid of confederates and without setting in motion any force that might, if unchecked, have completed the crimes despite the abandonment of his own effort to complete them, there was no need to instruct the jury as to the defendant's obligation to take affirmative steps and acts to prevent the commission of those crimes.

Fourth and finally, as the state also argued, the court's instruction correctly listed both statutory elements of the defense of renunciation, thus properly informing the jury as to how, and on what basis, it must determine if the state had disproved that defense beyond a reasonable doubt. Because those instructions have not been challenged in any way other than that specified previously, we reject the defendant's claim of instructional error.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant was also convicted of threatening in the second degree in violation of General Statutes § 53a-62 (a) (1) and carrying a dangerous weapon in violation of General Statutes § 53-206 (a). The defendant does not challenge the conviction of those charges here. The defendant was acquitted of reckless endangerment in the first degree under General Statutes § 53a-63 (a).

[2] The court sentenced the defendant to six years incarceration for attempted robbery in the first degree, one year of incarceration for threatening in the second degree, six years incarceration for attempted larceny in the second degree, and one year of incarceration for carrying a dangerous weapon, with all sentences to run concurrently with one another.

[3] The defendant does not argue that the state failed to prove beyond a reasonable doubt the elements of attempted robbery or attempted larceny. The crime of attempt, as it applies in this case, is satisfied when "[a] person . . . acting with the kind of mental state required for commission of the crime . . . intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." General Statutes § 53a-49 (a) (2). Accordingly, a conviction for attempt to commit a substantive crime requires proof beyond a reasonable doubt that the defendant, (1) while acting with the mental state required for commission of the substantive crime, (2) intentionally took a substantial step in a course of conduct planned to culminate in his commission of that substantive crime.

A person commits the substantive crime of robbery in the first degree, as charged in this case, when "in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of . . . (2) compelling the owner of such property . . . to deliver up the property"; General Statutes § 53a-133; and, in so doing, "uses or threatens the use of a dangerous instrument . . . ." General Statutes § 53a-134 (a) (3).

A person commits the substantive crime of larceny in the second degree, as charged in this case, when he commits a larceny and "the property . . . is taken from the person of another . . . ." General Statutes § 53a-123 (a) (3). Finally, a person commits the substantive crime of larceny, as required for proof of both robbery in the first degree and larceny in the second degree, when, "with intent to deprive another of property or to appropriate the same to himself . . . he wrongfully takes, obtains or withholds such property from an owner. . . ." General Statutes § 53a-119.

Thus, a conviction for attempted robbery requires proof beyond a reasonable doubt that the defendant, (1) while acting with intent to deprive another of property or to appropriate same to himself, (2) intentionally takes a substantial step toward the commission of the substantive crime of robbery. A conviction for attempted larceny requires proof beyond a reasonable doubt that the defendant, (1) while acting with intent to deprive another of

property or to appropriate same to himself, (2) intentionally takes a substantial step toward the commission of the substantive crime of larceny.

[4] "When the actor's conduct would otherwise constitute an attempt . . . it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose." General Statutes § 53a-49 (c).

[5] Section 5.01 (4) of the Model Penal Code provides in relevant part: "When the actor's conduct would otherwise constitute an attempt . . . it is an affirmative defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose. . . ."

[6] The defendant made a cursory mention in this section of his initial brief that the court's jury instruction failed to clarify that the defendant could renounce after taking a substantial step toward commission of the attempted crime, as long as he had not yet committed the substantive crime. The defendant did not provide any analysis for this separate claim. Because this issue was not adequately briefed, we do not address it. See *State* v. *Book*, 155 Conn. App. 560, 572–73, 109 A.3d 1027 (2015) ("[W]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." [Internal quotation marks omitted.]).